U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 MAR 19 PM 4: 11

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

IBEW LOCAL 98 PENSION FUND,      )
ADRIENNE HALBERSTAM, JACOB       )
HALBERSTAM, SARAH HALBERSTAM     )
and DAVID RAUL, Individually and on   )
behalf of all others similarly situated,   )
                                 )
        Plaintiffs,              )
                                 )
        v.                       )        Case No. 11-cv-222
                                 )
CENTRAL VERMONT PUBLIC SERVICE   )
CORPORATION, GAZ MÉTRO LIMITED   )
PARTNERSHIP, WILLIAM R. SAYRE,   )
ROBERT L. BARNETT, ROBERT G.     )
CLARKE, JOHN M. GOODRICH, ROBERT )
B. JOHNSTON, LAWRENCE J. REILLY, )
ELISABETH B. ROBERT, JANICE L.   )
SCITES, WILLIAM J. STENGER, and  )
DOUGLAS J. WACEK,                )
                                 )
        Defendants.              )

**OPINION AND ORDER DISMISSING WITHOUT PREJUDICE COUNTS V & VI
OF PLAINTIFFS' AMENDED COMPLAINT AND ORDERING
SUPPLEMENTAL BRIEFING REGARDING WHETHER THE COURT
SHOULD EXERCISE SUPPLEMENTAL JURISDICTION
OVER PLAINTIFFS' STATE LAW CLAIMS**
(Doc. 34)

This matter comes before the court on Defendants' motion to dismiss Plaintiffs'

Amended Complaint. (Doc. 34.) Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants seek

dismissal with prejudice of the Amended Complaint in its entirety, asserting Plaintiffs'

allegations are insufficient to state a claim as a matter of law. Plaintiffs oppose dismissal.

Plaintiffs are represented by David T. Wissbroecker, Esq., and Philip C.

Woodward, Esq. Central Vermont Public Service Corporation ("CVPS") and the

individually-named Defendants are represented by David F. Graham, Esq., Elizabeth R.

Wohl, Esq., Kathleen Holthaus, Esq., R. Bradford Fawley, Esq., and Rachael B. Niewoehner, Esq. Gaz Métro Limited Partnership ("Gaz Métro") is represented by R. Jeffrey Behm, Esq., and Andrew A. Ruffino, Esq. The parties waived oral argument on the pending motion.

For the reasons set forth below pursuant to Fed. R. Civ. P. 12(b)(6), the court hereby DISMISSES WITHOUT PREJUDICE Plaintiffs' federal securities law claims set forth in Counts V and VI of the Amended Complaint. With regard to Plaintiffs' remaining state law claims, the court GRANTS the parties twenty (20) days from the date of this Order to submit memoranda as to the propriety of the court's exercising supplemental jurisdiction over those claims.

## I.    Factual and Procedural Background.

### A. The Record Before the Court.

In deciding a motion to dismiss, in addition to the complaint's well-pleaded allegations, the court may consider documents attached to the complaint, incorporated therein by reference, or integral to the complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (explaining that in considering a Rule 12(b)(6) motion to dismiss, the court "may consider any written instrument attached to the complaint"); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument . . . incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."). "This includes public disclosure documents filed with the SEC as required by law[.]" *Warchol v. Green Mountain Coffee Roasters, Inc.*, 2012 WL 256099, at *1 (D. Vt. Jan. 27, 2012) (citing *ATSI Commc'ns, Inc.*, 493 F.3d at 98).

The Amended Complaint references and relies on the Proxy Statement filed by CVPS on August 29, 2011. (Doc. 34-2.) In addition, CVPS filed a Supplemental Proxy Statement on September 19, 2011[1] (Doc. 34-3), and a 2011 Form 8-K with the SEC on

---

[1] The Proxy Statement and the Supplemental Proxy are collectively referred to herein as the "Proxy Statement."

2

September 29, 2011 (Doc. 34-4). As publicly filed documents integral to or incorporated within the Amended Complaint, they may be considered in conjunction with the pending motion to dismiss.

### B. The Parties.

Plaintiffs are CVPS shareholders who bring this putative shareholder class action on behalf of themselves and other public shareholders of CVPS. They propose that they be named class representatives in the event the lawsuit is not dismissed and a class action is certified.

CVPS is an electric utility company based in Rutland, Vermont that is engaged in the purchase, production, transmission, distribution, and sale of electricity. As Vermont's largest electric utility, it serves approximately 160,000 residential, commercial, and industrial customers in 163 towns, villages, and cities in the state. CVPS also maintains interests in other utility-related businesses.

Gaz Métro is an energy company with its principal offices in Montreal, Quebec and is one of the largest natural gas distributors in Canada. It owns energy companies in the United States including Northern New England Energy Corporation, which, in turn, owns two utilities, Vermont Gas and Green Mountain Power Corporation (collectively, "Green Mountain"), which serve Vermont.

Each of the individually-named Defendants has served as a member of CVPS's Board of Directors (the "Board") during the relevant time period. In addition, they currently serve in various roles on CVPS's Compensation, Corporate Governance, Audit, and Executive Committees. Defendant William R. Sayre also serves as a director of CVPS affiliate Vermont Electric Power Company, Inc. Defendant Lawrence J. Reilly serves as CVPS's President and Chief Executive Officer ("CEO"). In addition to his status as a Board member, Defendant Robert B. Johnston represents one of CVPS's largest shareholders, Anita Zucker, who, as of March 1, 2011, owned 852,000 shares or 6.4% of the outstanding CVPS common stock. Ms. Zucker's stock is subject to restrictions outlined in a November 7, 2010 agreement between CVPS, the Article 6

3

Marital Trust, Anita G. Zucker, Trustee, and Mr. Johnston. Pursuant to that agreement, Mr. Johnston agreed not to take certain actions that could affect control of CVPS.

## C. The Potential Sale of CVPS.

After meetings held on February 3 and 4, 2011, the Board authorized CVPS's management and its financial advisor, Lazard Frères & Co. LLC ("Lazard"), to explore a potential sale of the company. On February 8, 2011, Lazard contacted sixteen potentially interested parties selected by the Board in consultation with Lazard and management. Eight of the sixteen parties entered into confidentiality agreements, which allowed each party to conduct further due diligence.

On or around March 9, 2011, four parties submitted written indications of interest: (1) Fortis, Inc. ("Fortis")[2] at $28.70 per share; (2) "Company B" at $28.00 per share; (3) Gaz Métro at $26.50 per share; and (4) "Fund A" at $25.00 per share. On March 11, 2011, the Board determined that Gaz Métro, Fortis, and Company B should be offered the opportunity to review additional non-public financial and other information regarding CVPS and thereafter submit definitive proposals regarding an acquisition of CVPS. On April 18, 2011, Lazard sent letters to Gaz Métro, Fortis, and Company B indicating they should submit "firm and final offers" by May 16, 2011. (Doc. 34-2 at 34.)

Robert Young, the former CEO and President of CVPS, and Mr. Reilly met with the CEOs and/or Presidents of Fortis, Company B, and Gaz Métro. After the meetings, Plaintiffs contend Fortis emerged as the preferred potential buyer for reasons unrelated to the maximization of the offer price to shareholders. On or around May 16, 2011, Gaz Métro made the highest offer for CVPS, bidding $34.00 per share. Fortis and Company B also made offers, bidding $30.27 and $30.50 per share, respectively.

Although Gaz Métro's offer price exceeded the other offers, the Board was concerned with the offer because Gaz Métro had submitted a mark-up of a draft merger agreement that "was likely to involve significantly more challenges to receive regulatory

---

[2] Fortis is an electricity and natural gas distribution utility based in Canada that serves approximately 2.1 million gas and electricity customers.

approval" and "weakened the steps required by Gaz Métro to obtain regulatory approval and allowed Gaz Métro to terminate the agreement without penalty if conditions imposed in regulatory approvals had a material adverse effect on Gaz Métro's (unspecified) expected benefits from the transaction." (*Id.* at 35.) The Board authorized Lazard to inform the three potential buyers that they should inform Lazard of their "best and final offers" prior to the Board's next meeting on May 25, 2011. Fortis and Company B were told to "meaningfully increase" their offers, while Gaz Métro was told that its offer was competitive. (*Id.*) Accordingly, Gaz Métro did not increase its bid at that time.

Plaintiffs assert that the Board favored Fortis in the sale process, despite Gaz Métro's ability and willingness to make a superior offer, because Fortis agreed to provide continued employment for CVPS management, including continued employment for Mr. Reilly as CEO and President of the surviving company. In addition, after allegedly repeated requests from CVPS to increase the number of Board members retained post-merger, Fortis agreed to elect to the Board of the surviving company up to seven members of CVPS's Board as designated by CVPS and who were members of the CVPS Board as of the closing, so long as those Board members were reasonably acceptable to Fortis. CVPS and Fortis agreed that Mr. Reilly would be one of the seven Board members of the surviving company. Fortis further stated its intention "to leave [CVPS] as an autonomous company within the Fortis group of companies, without workforce reductions." (Doc. 30-1 at ¶ 6.)

On May 24, 2011, the three parties submitted new offers. Fortis offered $34.10 per share; Gaz Métro offered $34.00 per share; and Company B offered $32.50 per share. The Board provided a proposed "no-shop" agreement[3] to Fortis and Gaz Métro and

---

[3] In general, a no-shop agreement provides that a company will work solely with a specific bidder for a definite period of time and prevents the company from actively "shopping" the company to other bidders during that time. *See In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 495 (Del. Ch. 2010). Such agreements "do not foreclose other offers, but operate merely to afford some protection to prevent disruption of the [a]greement . . . Quite simply, these do not appear to prevent a third party from making a bona fide offer at a price higher than that offered by [the current bidder.]" *Matador Capital Mgmt. Corp. v. BRC Holdings, Inc.*, 729 A.2d 280, 291 (Del. Ch. 1998).

informed those parties that CVPS was prepared to enter into such an agreement with the party selected at the Board's May 25, 2011 meeting. The no-shop agreement stated that CVPS was required to negotiate exclusively with the party selected, but it further stated that CVPS was permitted to accept an offer from, or participate in discussions or negotiations with, any party who made an offer if the Board determined that the failure to do so would be inconsistent with its fiduciary duties.

On the morning of May 25, 2011, prior to the Board's meeting, Gaz Métro informed Lazard that its offer of $34.00 per share would not be modified. At the meeting, the Board determined that the Fortis proposal was superior to Gaz Métro's offer, and therefore the Board authorized CVPS to enter into the no-shop agreement with Fortis. CVPS informed Gaz Métro and Company B that, pursuant to "the terms of the no-shop agreement, CVPS would not be pursuing their proposals and discussions with them would cease." (Doc. 34-2 at 37.)

On the evening of May 25, 2011, Gaz Métro submitted an offer of $35.00 per share. The Board, however, was unable to engage in any discussions with Gaz Métro due to the no-shop agreement. Later that evening, the Board informed Fortis of an unsolicited proposal involving a price per share in excess of the $34.10 offered by Fortis. On the morning of May 27, 2011, Fortis informed CVPS that it would increase its offer to $35.10 per share in exchange for, among other things, an increased termination fee. Also on that date, the Board unanimously approved the merger agreement with Fortis, which included an agreement to pay Fortis $17.5 million (the "Fortis Termination Fee"), plus up to an additional $2 million in expense reimbursements if CVPS breached the merger agreement with Fortis. As the Fortis deal was worth $470.3 million, Plaintiffs characterize the Fortis Termination Fee as "an unusually high 3.7%" of that amount. (Doc. 30-1 at ¶ 8.) In addition to the $2 million expense reimbursement fee, the total payment CVPS was obligated to pay Fortis amounted to 4.15% of the total consideration offered to CVPS shareholders under the proposed agreement with Fortis. Moreover, CVPS agreed not to pay any dividends on its common stock after November of 2011.

On May 30, 2011, CVPS and Fortis issued a press release announcing their agreement and the plan of merger (the "Fortis Merger Agreement") which contemplated the acquisition of CVPS by Cedar Acquisition Sub, Inc., Fortis's wholly-owned subsidiary. Shares that were issued and outstanding (other than those held by the individually-named Defendants) would be converted into the right to receive $35.10 per share in cash, without interest. Included in the press release was a statement that the $35.10 per share price constituted a 44% premium over CVPS's closing stock price the day before the announcement.

On June 23, 2011, Gaz Métro made an unsolicited offer of $35.25 per share. In its offer, it proposed to allow CVPS to pay its regular quarterly dividend of $0.23 per share until the transaction closed. Gaz Métro, however, did not offer management the opportunity to retain their employment positions with CVPS,[4] or offer Mr. Reilly continued employment as President and CEO of the post-merger company. Rather, Mr. Reilly would co-chair a transition team with Mary Powell, the CEO of Green Mountain. Subsequently, Ms. Powell would assume leadership of the combined company.

On or around June 27, 2011, Plaintiffs allege that the Board conceded that the Gaz Métro offer was reasonably likely to lead to a "superior proposal" which was more favorable to CVPS shareholders than the Fortis Merger Agreement. The Board authorized CVPS and its advisors to enter into discussions with Gaz Métro.

Pursuant to the Fortis Merger Agreement, CVPS's termination was subject to Fortis's right within five business days to propose changes to the terms of its offer that would make it at least as favorable to CVPS shareholders as the Gaz Métro offer. Fortis declined to make changes to its offer.

### D. The Gaz Métro Agreement.

On July 12, 2011, the Board announced in a press release that CVPS, Gaz Métro, and Danaus Vermont Corp., a wholly-owned subsidiary of Gaz Métro (the "Merger

---

[4] In contrast to the Fortis offer, Plaintiffs allege that the Gaz Métro Agreement provided that "[t]he selection of any such member of the Company Board to be so elected shall be in Parent's *sole discretion*." (Doc. 30-1 at ¶ 82.)

Sub"), had entered into an agreement and plan of merger (the "Gaz Métro Agreement"). The Gaz Métro Agreement called for the Merger Sub to merge with and into CVPS, with CVPS continuing as the surviving corporation and as a wholly-owned subsidiary of Gaz Métro. All issued and outstanding shares of CVPS common stock would automatically be converted into the right to receive $35.25 per share in cash, without interest.

Also on July 12, 2011, CVPS paid Fortis $19.5 million in termination fees and expense reimbursements. Plaintiffs allege that the Board's bad faith misconduct obligated CVPS to pay Fortis's termination and expense fees. As part of the Gaz Métro Agreement, Gaz Métro agreed to reimburse Fortis for the entire $19.5 million termination payment owed under the Fortis Merger Agreement. Absent the Board's alleged misconduct, Plaintiffs contend that Gaz Métro may have been willing to pay this same amount as part of its per share offer.[5] If so, CVPS shareholders could potentially have received increased consideration in the amount of approximately $1.57 per share from Gaz Métro, rather than the $0.15 per share increase they are currently expected to receive.

### E. The Proxy Statement.

On August 29, 2011, CVPS filed a Form DEFM 14A Proxy Statement. (Doc. 34-2.) In the Amended Complaint Plaintiffs describe the Proxy Statement as follows:

> On August 29, 2011, Defendants filed a materially misleading Proxy in contravention of §§ 14(a) and 20(a) of the 1934 Act, Rule 14a-9, and the Individual Defendants' duties of candor and full disclosure. The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information, thereby rendering the shareholders unable to cast an informed vote regarding the Proposed Gaz Métro Acquisition.

(Doc. 30-1 at ¶¶ 89-90.) Plaintiffs further allege the Proxy Statement omitted or misrepresented material information regarding the proposed Fortis Merger Agreement and the proposed Gaz Métro Agreement.

---

[5] The Amended Complaint cites no evidence that Gaz Métro considered this option.

According to Plaintiffs, the Proxy Statement indicated Lazard "assumed that the Company's five-year projections were reasonable and were the best available estimates of the future financial performance of CVPS in its analyses concluding that the Proposed Gaz Métro consideration was fair, from a financial point of view, to CVPS shareholders[.]" (*Id.* at ¶ 95.)

With regard to CVPS's value, Plaintiffs allege the Proxy Statement failed to disclose CVPS's complete five-year projections[6] and:

> [t]his information is material because information about a company's future must be disclosed in a ***complete*** way when that information is reasonably prepared, is considered to be the best estimate[] of future performance by the company's management and the company's financial advisors, is provided to potential buyers and investment bankers, is used by investment bankers in financial analyses provided in a merger proxy, and is only partially disclosed in the merger proxy.

(*Id.* at ¶ 98.) Without this information, Plaintiffs allege CVPS's public shareholders were unable to cast a fully informed vote on September 29, 2011 when they voted 97.56% in favor of the Gaz Métro Agreement.

In terms of Lazard's financial analyses, Plaintiffs allege that the Proxy Statement fails to disclose the underlying methodologies, projections, key inputs, and multiples relied upon and observed by Lazard.[7] Plaintiffs allege that this information is needed by shareholders to properly assess the credibility of Lazard's analyses which, in turn, may affect whether they would accept cash for their shares or retain an interest in CVPS.[8]

---

[6] Plaintiffs seek full disclosure of CVPS's five year projections, including (1) revenue; (2) EBITDA; (3) EBIT (or D&A); (4) taxes (or tax rate); (5) stock-based compensation expense; (6) capital expenditures; and (7) changes in working capital. (Doc. 30-1 at ¶ 98.)

[7] In particular, Plaintiffs allege that the proxy failed to disclose Lazard's selected comparable company multiples analysis, its consolidated discounted cash flow analysis, and its selected precedent transactions multiples analysis, all of which Plaintiffs contend are necessary for shareholders to make an informed decision.

[8] For example, Plaintiffs assert that the Proxy Statement fails to disclose information forming the basis of Lazard's selected comparable company multiples analysis and selected precedent transactions multiples analysis, including:

Plaintiffs allege that shareholders cannot determine if the selected companies are adequate comparables for Lazard to have used, and as a result, how much importance to place on Lazard's analyses without this disclosure.

Plaintiffs further allege that the Proxy Statement failed to disclose important aspects of Lazard's consolidated discounted cash flow analysis.[9] According to Plaintiffs, this information would allow shareholders to determine whether they should rely on Lazard's analyses and whether the analyses adequately reflect CVPS's long-term intrinsic value. They also seek disclosure of Lazard's book value analysis, if any.

Finally, Plaintiffs contend the Proxy Statement fails to disclose Lazard's potential financial interest in and its business relationship with Fortis and/or Gaz Métro over the past two years, including the amount of compensation received or to be received. They allege that shareholders must have this information in order to be informed of any perceived or actual conflict of interest.

---

(a) the basis of its use of closing prices on July 6, 2011 to calculate the observed multiples for the selected comparable companies; (b) the financial multiples and ratios of the Central Vermont comparable companies observed by Lazard, other than share price to 2011 estimated EPS and share price to 2012 EPS, that were calculated and compared by Lazard; (c) the value ranges indicated from each of the application of the 2011 P/E multiple, 2012 P/E multiple, and discounted application of the 2011 P/E multiple to the 2015 estimated earnings; and (d) whether Lazard performed any "book value" analysis and if so, the analysis.

(Doc. 30-1 at ¶ 101.)

[9] Plaintiffs identify the following omissions:

(a) the specific definition of unlevered free cash flow, as used in this analysis; (b) whether stock-based compensation was treated as a cash expense in this analysis; (c) whether the value of the Company's investments in affiliates was accounted for in this analysis and if so, the methodology used to account for this value; and (d) the value ranges indicated from each of the application EBITDA and P/E multiples to the core utility business and the interests in Vermont Transco LLC, and the application of P/E multiples to CVPS on a consolidated basis.

(*Id.* at ¶ 102.)

### F. Plaintiffs' Claims.

In Count I of their Amended Complaint (Doc. 30-1), Plaintiffs allege a claim of breach of fiduciary duty against the individually-named Defendants in connection with the proposed Fortis agreement. In Count II, Plaintiffs assert a claim for aiding and abetting breaches of fiduciary duty against CVPS in connection with the proposed Fortis acquisition. In Count III, Plaintiffs allege the Board breached its fiduciary duty with regard to the proposed acquisition by Gaz Métro. In Count IV, Plaintiffs allege CVPS and Gaz Métro aided and abetted the Board's breach of fiduciary duty in regard to the proposed Gaz Métro agreement. In Count V, Plaintiffs allege all Defendants violated § 14(a) of the Securities and Exchange Act of 1934 ("the 1934 Act") and Securities and Exchange Commission ("SEC") Rule 14a-9. In Count VI, Plaintiffs allege that all Defendants violated § 20(a) of the 1934 Act.

Counts I-IV of the Amended Complaint set forth state law claims. Counts V and VI set forth federal question claims and are the basis of this court's jurisdiction

## II. Procedural Background.

On September 15, 2011, Plaintiffs·filed their original Complaint seeking declaratory relief, imposition of a constructive trust, and injunctive relief (1) to prevent Defendants from consummating the proposed Gaz Métro Agreement[10] until Defendants disclose all material information and requiring (2) a remedial special meeting of CVPS shareholders to vote on the proposed Gaz Métro Agreement and/or (3) an opportunity for CVPS shareholders to withdraw their votes and exercise their dissenters' rights. Plaintiffs also sought monetary relief against CVPS and the Board of at least $19.5 million, which is the amount of the termination payment paid to Fortis. Plaintiffs allege that, as a result of the Board's breach of its fiduciary duties, part of the price that Gaz Métro must pay to acquire CVPS flowed to Fortis instead of directly to CVPS shareholders.

---

[10] The proposed acquisition is expected to close during the first half of 2012.

On October 14, 2011, Defendants filed a motion to dismiss Plaintiffs' Complaint. Thereafter, Plaintiffs filed an Amended Complaint on December 7, 2011. The Amended Complaint eliminates certain allegations regarding the purported Proxy Statement disclosure violations but continues to challenge the adequacy of disclosures in other respects. It also seeks the same equitable relief and damages. In addition, the Amended Complaint alleges the individually-named Defendants violated their fiduciary duties under Vermont law. On December 21, 2011, Defendants filed their motion to dismiss Plaintiffs' Amended Complaint.

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a motion to dismiss. 129 S. Ct. at 1950. First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 1949-50. However, this assumption of truth does not apply to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, a court must determine whether the complaint's "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court's assumption of alleged facts as true, however, does not extend to factual allegations "contradicted by more specific allegations or documentary evidence[.]" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *see*

12

*also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Woldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (discrediting allegation "belied" by letters attached to the complaint); *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) (ruling that "a court need not feel constrained to accept as truth conflicting pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely[.]"); *In re Optionable Secs. Litig.*, 577 F. Supp. 2d 681, 692 (S.D.N.Y. 2008) (internal citation and quotation omitted) (stating the court generally assumes the truth of the factual allegations in the complaint, but not if they conflict with "the plain language of publicly filed disclosure documents[.]").

Rather than address Plaintiffs' claims in the order in which they are presented in the Amended Complaint, the court addresses Plaintiffs' federal claims first as dismissal of those claims may warrant dismissal of Plaintiffs' state court claims so that they may be considered by the appropriate state court.

### B. Count V: Whether the Amended Complaint Fails to State a Claim for a Violation of Section 14(a) of the 1934 Act and SEC Rule 14a-9.

Plaintiffs allege all Defendants, individually and in concert, have violated section 14(a) of the 1934 Act and SEC Rule 14a-9 by filing incomplete and potentially misleading proxy statements. As Defendants point out, Plaintiffs do not allege that Defendants failed to comply with the affirmative proxy disclosure requirements listed in Rule 14a-9, or that the Proxy Statement made any statement that is affirmatively false. *See* 17 C.F.R. § 240.14a-1. Instead, Plaintiffs contend that the Proxy Statement "misrepresented and/or omitted material information about the unfair sales process for the Company (such as favoritism of Fortis and the conflict of interests of persons involved in the process), the current value of the Company, and information relating to Lazard's financial analysis and fairness opinion." (Doc. 30-1 at ¶ 135.) They allege that:

> [t]he omissions and false and misleading statements in the Proxy are
> material in that a reasonable shareholder would consider them important in
> deciding how to vote on the Proposed Gaz Métro Acquisition. In addition,
> a reasonable investor would view a full and accurate disclosure as
> significantly altering the "total mix" of information made available in the
> Proxy and in other information reasonably available to shareholders.

(*Id.* at ¶ 138.)

In their Rule 12(b)(6) motion, Defendants seek dismissal of Plaintiffs' section 14(a) and SEC Rule 14a-9 claims on a number of grounds. First, they point out that many of Plaintiffs' allegations are based "upon information and belief" and are bereft of specific facts or are wholly conclusory and as such should be disregarded in considering a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949. Second, they contend that the Amended Complaint fails to comply with the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Third, they assert that Plaintiffs fail to state a claim because although they allege omissions from the Proxy Statement, they do not allege that other statements in the Proxy Statement are false or misleading by virtue of those omissions. Finally, they argue that it is well-established that federal securities law does not require disclosure of the information Plaintiffs seek merely on the ground that it may be relevant, helpful, or interesting to the average shareholder.

In response, Plaintiffs do not address Defendants' PLRSA challenge and claim that all they must demonstrate in order to survive a motion to dismiss is that the omissions from the Proxy Statement are "material" in that the information would be considered important to the average shareholder in deciding how to vote on the transaction in question.

Section 14(a) of the 1934 Act makes it unlawful to solicit proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a). Section 14(a) is satisfied "[o]nly when the proxy statement fully and fairly furnishes all the objective material facts" to allow a reasonably prudent investor "to make an informed investment decision[.]" *Mendell v. Greenberg*, 927 F.2d 667, 674 (2d Cir. 1991). SEC Rule 14a-9, promulgated under section 14(a), prohibits proxy solicitation:

> by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9(a).

In the context of a proxy statement, a fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090 (1991); *Minzer v. Keegan*, 218 F.3d 144, 149 (2d Cir. 2000). "Once the proxy statement purport[s] to disclose the factors considered [by the board of directors] . . . there [i]s an obligation to portray them accurately[.]" *Va. Bankshares*, 501 U.S. at 1098 n.7. However, "omission of information from a proxy statement will violate these provisions [only] if either the SEC regulations specifically require disclosure of the omitted information . . . or the omission makes other statements in the proxy statement materially false or misleading." *Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002). Therefore, to state a claim for a material omission under Rule 14a-9, a plaintiff "must show that there was a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993) (internal quotation marks omitted); *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999) (same). The "total mix" includes only information "reasonably available to shareholders[.]" *United Paperworkers*, 985 F.2d at 1198. Accordingly, "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable [shareholder,]" *Resnik*, 303 F.3d at 154, "nit-picking should not become the name of the game," and "[f]air accuracy, not perfection, is the appropriate standard." *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978).

## 1. Whether Plaintiffs' Amended Complaint Satisfies the Requirements of the PSLRA.

"[T]he PSLRA requires the complaint to specify each allegedly misleading statement, explain the reason (or reasons) that the statement is misleading, and, if an allegation is made upon information and belief, all facts with particularity upon which

that belief is formed." *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004) (citing 15 U.S.C. § 78u-4(b)(1)); *see Beck ex rel. Equity Office Props. Trust v. Dobrowski*, 2007 WL 3407132, at *6-7 (N.D. Ill. Nov. 14, 2007) (dismissing plaintiff's section 14(a) claims under the PSLRA where plaintiff "simply list[ed] information that [d]efendants allegedly omitted from the proxies"); *Hysong v. Encore Energy Partners LP*, 2011 WL 5509100, at *8 (D. Del. Nov. 10, 2011) (determining dismissal of section 14(a) claims is warranted where plaintiff fails "to identify even one specific misleading statement" because the "desire to know information that may be material . . . cannot push [plaintiff's] factual allegations over the speculative-level threshold.").

In their Amended Complaint, although Plaintiffs identify numerous specific omissions from the Proxy Statement which they contend are material, they neither identify specific statements in the Proxy Statement which they contend are false or misleading by virtue of these omissions,[11] nor explain why those statements are false or misleading. Instead, Plaintiffs merely list additional information not included in the Proxy Statement which they contend is material and which they assert Defendants should have disclosed. Thereafter, they make a single conclusory allegation that these omissions rendered unspecified statements false or misleading and altered the total mix of information reasonably available to the investor. *See* Doc. 30-1 at ¶ 138.

Courts generally dismiss non-specific pleadings as noncompliant with the PSLRA even where, as here, Plaintiffs contend the omissions in question are material. *See Dixon v. Ladish Co., Inc.*, 785 F. Supp. 2d 746, 750 (E.D. Wis. 2011) (dismissing plaintiff's section 14(a) claims where plaintiff "has not met the pleading requirements of the

---

[11] The closest Plaintiffs come to satisfying this standard is in paragraph 102 of the Amended Complaint in which they point out that, in the absence of information regarding Lazard's consolidated discounted cash flow analysis, the information in that analysis is "materially misleading because without this information, shareholders are not in a position to determine whether or not they should rely on the Lazard analysis, or whether the analysis adequately reflects the long-term intrinsic value of the Company." (Doc. 30-1 at ¶ 102). However, the allegation remains generalized in nature and does not identify any particular statement in the Proxy Statement which is false or misleading as a result of the omission.

PSLRA, regardless of whether the omissions cited would be material."); *Beck*, 2007 WL 3407132, at *6 (concluding plaintiff's complaint failed to meet the PSLRA's heightened pleading standards because plaintiff failed to allege defendant's omissions rendered statements defendants actually made misleading and did not explain how any omitted information had an effect on a specific statement actually made). However, because the issue of whether Plaintiffs have failed to state a claim is so closely intertwined with Plaintiffs' failure to satisfy the heightened pleading standards of the PSLRA, the court does not rest its decision on the PSLRA alone but considers those pleading requirements in conjunction with the requirements of *Iqbal* and *Twombly* and applicable federal securities law.

> ### 2. Whether Plaintiffs Fail to State a Claim Based on the Alleged Omission of All of CVPS's Financial Projections and All of the Information Underlying Lazard's Analyses.

In their Amended Complaint, Plaintiffs identify two broad categories of what they characterize as "material omissions" from the Proxy Statement which they contend violate section 14(a) and Rule 14a-9. Plaintiffs contend that Defendants selectively disclosed only portions of CVPS's five-year projections. They further allege that the Proxy Statement also failed to disclose "the underlying methodologies, projections, key inputs, and multiples," pertaining to Lazard's financial analyses,[12] including information relevant to Lazard's discounted cash flow analysis, its "Selected Comparable Company Multiples Analysis and Selected Precedent Transactions Multiples Analysis[,]" as well as

---

[12] Many of Plaintiffs' alleged omissions are phrased in a way that indicates Plaintiffs seek to know whether and why Lazard used certain methodologies or valuations rather than contending that anything about its analysis was false or misleading. For example, Plaintiffs allege the Proxy Statement failed to disclose:

> the basis of [Lazard's] use of closing prices on July 6, 2011 to calculate the observed multiples for the selected comparable companies; . . . whether Lazard performed any book value analysis, and if so, the analysis[;] . . . whether stock-based compensation was treated as a cash expense in this analysis; [and] whether the value of the Company's investments in affiliates was accounted for in this analysis and if so, the methodology used to account for this value[.]

(Doc. 30-1 at ¶¶ 101-103.)

data about CVPS's book value. (Doc. 30-1 at ¶¶ 100-103.) Plaintiffs allege that without this information, CVPS shareholders were deprived of the ability to exercise an informed vote and could not reasonably decide whether to accept the cash payout or retain an interest in CVPS.

Defendants respond that the Proxy Statement included a summary and a thorough description of the process Lazard used to obtain the merger price (*see* Opinion of Our Financial Advisor, Doc. 34-2 at 15, 46-54), and an explanation of why the Board believed the merger was fair (*see* Recommendation of Our Board of Directors, *id.* at 15, 42-46). With regard to Lazard's opinions, the Proxy Statement included both the aforementioned summary and a detailed description of the analyses performed in connection with the merger, including the conclusions of each analysis. (*Id.* at 15, 46-54; *see also* Annex B, Fairness Opinion, *id.* at 177-180.) In addition, Defendants disclosed some of the material data points in the Proxy Statement that Lazard relied on in preparing its analysis (*see* Forward-Looking Financial Information, *id.* at 55-56) and made additional disclosures regarding Lazard's opinion, including certain data points. (Doc. 34-3 at 8-9.) Plaintiffs do not allege that any of this information was, itself, false or misleading.

Defendants further point out that Plaintiffs fail to allege how any of the additional details they seek regarding CVPS's financial predictions or the data underlying Lazard's financial analyses would have significantly altered the total mix of information relevant to the average shareholder's decision. They point out that it is not enough for Plaintiffs to allege that the omitted information would be helpful, relevant or interesting; instead, they must provide a factual basis for concluding the Proxy Statement was false or misleading without this information. In the absence of such allegations, Defendants argue Plaintiffs have failed to state a claim as a matter of law and dismissal is required.

As a threshold matter, contrary to Plaintiffs' contentions, the standard for alleging a section 14(a) violation is not solely whether the information omitted from a proxy statement is "material." To the contrary, the plain language of Rule 14a-9 requires a plaintiff to show both materiality *and* a false or misleading statement as a result of the omission. *See* 17 C.F.R. 240.14a-9 (a proxy statement violates this rule if it "omits to

18

state any material fact *necessary in order to make the statements therein not false or misleading.*" (emphasis supplied)); *see also Hysong*, 2011 WL 5509100, at *5 ("Rule 14a-9's 'materially misleading omission' (or the 'materially omitted facts rendering a proxy statement misleading') requirement is comprised of two discrete elements: (1) the omission must be "*material*", and (2) the omission must render some statement included in the proxy solicitation '*false or misleading.*'"); *Vides v. Amelio*, 265 F. Supp. 2d 273, 281 (S.D.N.Y. 2003) (dismissing plaintiffs section 14(a) and Rule 14a-9 claims because the omitted information is "not required to make other information presented in the proxy statement not materially false or misleading.").

In this case, Plaintiffs have identified what they characterize as material omissions, but they do not identify any statements in the Proxy Statement which are rendered false or misleading by virtue of those omissions. A conclusory allegation that the Proxy Statement as a whole is misleading or false or that the total mix of information would be altered by the inclusion of this information will not suffice. *See Lewis v. Chrysler Corp.*, 949 F.2d 644, 653 (3d Cir. 1991) (finding plaintiff's general allegations that proxy materials were false and misleading failed to establish a section 14(a) violation). For these reasons, the court agrees with Defendants that Plaintiffs have failed to state a claim under section 14(a) and Rule 14a-9 regarding CVPS's financial projections or the information underlying Lazard's analyses.

In addition to these pleading deficiencies, it is worth noting that Plaintiffs seek information which many courts have ruled need not be disclosed in the absence of a false or misleading statement.[13] Indeed, "[n]either the SEC nor the Second Circuit have

---

[13] *See, e.g., In re 3Com S'holders Litig.*, 2009 WL 5173804, at *2-3 (Del. Ch. Dec. 18, 2009) (refusing to require full disclosure of projections underlying financial summaries where plaintiffs wanted the information to make their own independent evaluation of value and failed to establish it would alter the total mix of available information); *Resnik*, 303 F.3d at 154 (refusing to require disclosure of information that is merely relevant); *In re Openlane, Inc.*, 2011 WL 4599662, at *14 (Del. Ch. Sept. 30, 2011) (holding plaintiff's demand that defendants disclose "the identity and financial metrics of the underlying transactions . . . is simply not necessary for the directors to fulfill their duty to provide a 'fair summary.'. . . Providing details of all of the underlying transactions analyzed would likely inundate the reader and dilute the impact of the disclosure[.]"); *see also Resnik*, 303 F.3d at 154 (refusing to require disclosure of information

required that financial projections be included in proxy materials." *Mendell v. Greenberg*, 612 F. Supp. 1543, 1550 (S.D.N.Y. 1985); *see also In re 3Com S'holders Litig.*, 2009 WL 5173804, at *3 (Del. Ch. Dec. 18, 2009) (ruling that "[a] disclosure that does not include all financial data needed to make an independent determination of fair value is not . . . *per se* misleading or omitting a material fact. The fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis" and noting the court was "reluctant to require full disclosure of the projections underlying such [financial] summaries as [it did] not believe it would alter the total mix of available information and may even undermine the clarity of the summaries.") (citation omitted)). Accordingly, where "an adequate and fair summary of the work performed by [the financial advisor] is included in the proxy," and the plaintiffs "failed to assert a colorable reason why management should be required to provide full versions of the projections underlying the already disclosed summaries," a challenge to a proxy statement should be dismissed. *Id.*; *see also In re Marsh & McLennan Cos., Inc. Secs. Litig.*, 536 F. Supp. 2d 313, 324 (S.D.N.Y. 2007) (granting motion to dismiss plaintiff's section 14(a) claim where information sought was relevant, but there was no duty to disclose the information). Plaintiffs' allegations regarding Lazard's alleged conflict of interest fare no better.

### 3. Whether Plaintiffs State a Claim Based Upon the Omission of Lazard's Alleged Conflicts of Interest.

Defendants seek dismissal of Plaintiffs' section 14(a) and Rule 14a-9 claims based upon the alleged omission of Lazard's potential conflicts of interest in the event Lazard performed work for Fortis and/or Gaz Métro over the past two years, including the amount of compensation it received or will receive. If this work was in fact performed, Plaintiffs contend it must be disclosed because "[i]t is material for shareholders to be

that is merely "relevant or of interest" where it "is not required to make other information presented in the proxy statement not materially false or misleading."); *Mendell v. Greenberg*, 612 F. Supp. 1543, 1548 (S.D.N.Y. 1985) ("[P]roxy materials need not be perfect, but must simply convey a sufficiently accurate picture so as not to mislead.") (internal quotation marks omitted).

informed of the financial and economic interests Lazard had or has in its role in the Proposed Fortis Acquisition and/or the Proposed Gaz Métro Acquisition that could be perceived or create a conflict of interest." (Doc. 30-1 at ¶ 106.) In response, Defendants point out that not only do Plaintiffs again fail to identify how this alleged, potential omission renders other statements in the Proxy Statement false or misleading, but "Plaintiffs' non-disclosure allegation is just another groundless 'whether' question that does not suffice to state a claim." (Doc. 42 at 38.) In other words, Defendants contend that it is not enough to speculate that facts may exist which may create a conflict of interest, Plaintiffs must either affirmatively identify such facts or, if they can do so only based upon information and belief, they must identify sufficient facts with particularity to raise their claim above the level of pure speculation.

"[T]he failure to disclose even potential conflicts of interest may be actionable under federal securities law, independent of whether the undisclosed facts might also support a claim for an actual breach of fiduciary duty under state law." *Kahn v. Wien*, 842 F. Supp. 667, 677 (E.D.N.Y. 1994) (citing *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 993-94 (2d Cir. 1988)). Therefore:

> [p]otential conflicts of interest, such as where a corporate director has a personal stake in a corporate decision or has a special relationship with a party whose interests may be adverse to those of the shareholders, must be disclosed so that shareholders are alerted to the possible impairment of the director's judgment and know to put the director's recommendations in perspective.

*Kahn*, 842 F. Supp. at 677-78 (citing *Kas v. Fin. Gen. Bankshares, Inc.*, 796 F.2d 508, 513 (D.C. Cir. 1986)).

The Proxy Statement adequately described Lazard's compensation for its work in this case,[14] (Doc. 34-2 at 54), and Plaintiffs do not claim otherwise. It also fully

---

[14] The Proxy Statement states:

> In connection with Lazard's services as financial advisor to Central Vermont with respect to the merger, Central Vermont agreed to pay Lazard a fee equal to $7.9 million less previously paid retainers of $50,000, of which one-fourth was paid upon the rendering of a previous opinion of Lazard's regarding an alternate

disclosed a potential conflict of interest for Lazard based upon Lazard's general business activities:

> [I]n the ordinary course of their respective businesses, Lazard, LFCM Holdings LLC (an entity indirectly owned in large part by managing directors of Lazard) and their respective affiliates may actively trade securities of Central Vermont, Gaz Métro and certain of their respective affiliates for their own accounts and for the accounts of their customers and, accordingly, may at any time hold a long or short position in such securities, and may also trade and hold securities on behalf of Central Vermont, Gaz Métro and certain of their respective affiliates.

(*Id.* at 54, 180.)

The Amended Complaint's unsupported speculation that Lazard may have additional, undisclosed conflicts of interest is insufficient to state a claim. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"); *Kennedy v. United Collection Bureau, Inc.*, 2010 WL 445735, at *4 (D. N.J. Feb. 3, 2010) ("Plaintiff does not advance any of [its] theories as actually being factual but instead offers them to illustrate the point that there may be a set of facts in existence somewhere, possibly unbeknownst to Plaintiff, which would entitle him to relief. This clearly does not satisfy the requirements of *Bell Atlantic* and *Iqbal*."). In the absence of any allegation that the disclosure made by Lazard is either false or omits material information that renders the Proxy Statement misleading, Plaintiffs' claim based on the omission of Lazard's alleged conflicts of interest must be dismissed.

In summary, in Count V of the Amended Complaint, Plaintiffs' claims alleging violations of section 14(a) and Rule 14a-9 identify alleged material omissions from the Proxy Statement but do not further allege (other than in a conclusory manner) that those

---

> transaction to acquire Central Vermont, one-fourth is payable upon approval of the merger by Central Vermont's shareholders and one-half is payable upon the closing of the merger. Central Vermont has also agreed to reimburse Lazard for certain expenses incurred in connection with Lazard's engagement and to indemnify Lazard and certain related persons under certain circumstances against various liabilities that may arise from or be related to Lazard's engagement, including certain liabilities under United States federal securities laws.

(Doc. 34-2 at 54.)

omissions render other statements in the Proxy Statement false or misleading. In the absence of this second component of their claims, Count V is hereby DISMISSED for failure to state a claim.

### C. Count VI: Whether the Amended Complaint Fails to State a Claim for Violation of Section 20(a) of the 1934 Act.

In Count VI, Plaintiffs assert an aiding and abetting claim against all Defendants for violating section 20(a) of the 1934 Act, which provides:

> [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t. With regard to whether Defendants are "controlling persons," Plaintiffs allege:

> the Individual Defendants, CVPS and Gaz Métro had the ability to exercise control over and did control a person or persons who have each violated § 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to § 20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, CVPS shareholders will be irreparably harmed.

(Doc. 30-1 at ¶ 147.)

Defendants seek dismissal of Plaintiffs' section 20(a) claim based upon Plaintiffs' failure to allege a primary violation under section 14(a) of the 1934 Act. Plaintiffs respond that they have alleged a primary violation and, moreover, have properly alleged all other essential elements of a section 20(a) claim.

In order to withstand a motion to dismiss, a plaintiff alleging a violation of § 20(a) must show "a primary violation by the controlled person and control of the primary violator by the targeted defendant . . . and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled

person." *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (internal quotations, citations, and brackets omitted); *STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 535 (E.D.N.Y. 2011) (same). Thus, where there is no primary violation by the controlled person, there is no violation under § 20(a). *See Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004) ("Each of these claims [under § 20(a)] is necessarily predicated on a primary violation of securities law. Because we have already determined that the district court properly dismissed the primary securities claims against the individual defendants, these secondary claims must also be dismissed."); *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (dismissing plaintiffs' § 20(a) claim where they "failed to plead a primary violation by any person named in the [c]omplaint").

Here, the court has concluded that Plaintiffs have failed to state a claim for a violation of section 14(a). Without this primary violation, Plaintiffs' Amended Complaint fails to set forth one of the prima facie elements of a cause of action under section 20(a). "This being the case, there is no need to determine whether the defendant directors were controlling persons within the meaning of the securities laws and whether they were culpable participants in an underlying securities violation." *Bond Opportunity Fund*, 2003 WL 21058251, at *11. Accordingly, the court hereby DISMISSES Count VI of Plaintiffs' Amended Complaint.

### D. Whether the Court Should Dismiss Plaintiffs' Federal Claims With or Without Prejudice.

Defendants seek dismissal of Plaintiffs' Amended Complaint with prejudice on the basis that the shortcomings of the Amended Complaint "are failings that Defendants have previously identified [in their motion to dismiss the initial Complaint], and Plaintiffs have made no attempt to cure despite repleading[.]" (Doc. 42 at 15.)[15] As a leading commentator has observed,

---

[15] Defendants raise this argument for the first time in their reply, although in their motion they request dismissal with prejudice. Typically, an argument briefed for the first time in a reply is not considered by the court. *See Evangelista v. Ashcroft*, 359 F.3d 145, 155 n.4 (2d Cir. 2004) ("[W]e will not consider an argument raised for the first time in a reply brief.").

dismissal under Rule 12(b)(6) generally is not immediately final or on the
merits because the district court normally will give the plaintiff leave to file
an amended complaint to see if the shortcomings of the original document
can be corrected. The federal rule policy of deciding cases on the basis of
the substantive rights involved rather than on technicalities requires that the
plaintiff be given every opportunity to cure a formal defect in the pleading.
. . . A wise judicial practice (and one that is commonly followed) would be
to allow at least one amendment regardless of how unpromising the initial
pleading appears[.]

5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, & RICHARD L.
MARCUS, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2011); *see also McIntosh
v. Covenant House*, 2007 WL 1946540, at *8 (S.D.N.Y. June 28, 2007) (stating "[t]he
better practice . . . is to dismiss without prejudice, to give a plaintiff one last chance to
correct his pleading error.").

Nevertheless, a court may grant a motion to dismiss with prejudice "where leave
to amend has previously been given and the successive pleadings remain prolix and
unintelligible," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988), or when further
amendment would be futile. *See Saunders v. Coughlin*, 1995 WL 144107, at *6
(S.D.N.Y. Mar. 30, 1995) (dismissing complaint with prejudice where plaintiff failed to
cure deficiencies noted in the original complaint, and finding that granting leave to
amend would be futile).

In this case, Plaintiffs have had one opportunity to amend the initial Complaint in
response to the deficiencies pointed out by Defendants in their first motion to dismiss.
Defendants' motion to dismiss the original Complaint raised the issue that

[w]hile the Complaint lists a variety of allegedly omitted information, it
does not even attempt to explain in what way any specific statements in the
Proxy were rendered "misleading" – i.e., created a deceptive impression
that would be contradicted or dispelled by the inclusion of additional
information – by these alleged omissions.

(Doc. 4 at 10.) The alleged disclosure violations complained of in the Amended
Complaint are nearly identical to those included in the initial Complaint, although the
Amended Complaint specifies in greater detail what Plaintiffs seek. The Amended
Complaint nonetheless fails to plead with sufficient specificity how the omission of the

25

indicated information made other information in the Proxy Statement false or misleading. Arguably, Plaintiffs have thus already had an ample opportunity to cure the deficiencies in their pleading.

On the other hand, this case is in its early stages, there has been an opportunity for only limited discovery, Plaintiffs' claims are not "prolix and unintelligible," and the court cannot find that if Plaintiffs sought leave to amend their Complaint, such amendment would be futile. Against this backdrop, the court concludes that dismissal without prejudice is appropriate at this time.

### E. Counts I-IV: Plaintiffs' State Law Claims.

Defendants argue that Plaintiffs' state law claims set forth in Counts I-IV of the Amended Complaint must also be dismissed because they "consist of little more than pejorative characterizations of CVPS's publicly disclosed decisions" and do not meet the pleading standard set forth in *Iqbal*. (Doc. 34-1 at 22.)

Plaintiffs counter that they have adequately alleged state court claims based upon the Board's alleged breach of its fiduciary duty to CVPS shareholders under Vermont law by focusing "on the interests of the Company's management and Board" at the expense of "focusing on the interests of the Company's shareholders." (Doc. 30-1 at ¶ 69.) With regard to the Gaz Métro Agreement, Plaintiffs allege the Board breached its fiduciary duties to CVPS shareholders by violating its duty of disclosure. (*Id.* at ¶ 124.)

Although the parties have not briefed the issue, the court must consider whether it should proceed to adjudicate Plaintiffs' state law claims after Plaintiffs' federal claims have been dismissed. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("When . . . federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)). Complicating this inquiry is the fact that the court has declined to dismiss Plaintiffs' Amended Complaint with prejudice, thereby leaving open the possibility that Plaintiffs will seek to amend their claims and will thereafter adequately allege at least one viable federal claim.

A district court may decline to exercise jurisdiction over state law claims when:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Section 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which the district courts can refuse its exercise." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). As the Supreme Court explained in *Cohill*, where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. at 350 n.7.

The general practice in the Second Circuit is that "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also Edmonds v. Seavey*, 379 F. App'x 62, 64 n.1 (2d Cir. 2010) ("As there existed no independent basis for subject matter jurisdiction over appellant's remaining state law claims, the district court was well within its discretion to decline to exercise supplemental jurisdiction over those claims.") (citing *Matican v. City of New York*, 524 F.3d 151, 154-55 (2d Cir. 2008)); *S & R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 464 (S.D.N.Y. 2008) (dismissing all federal claims, declining to exercise supplemental jurisdiction over state claims, and declining to exercise jurisdiction over plaintiff's request for declaratory relief which arose under state law).

Because the court raises the issue of whether to exercise supplemental jurisdiction *sua sponte* and because the parties have not yet had an opportunity to brief it, the court will allow them twenty (20) days to do so before ruling on the issue.

27

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' Amended Complaint (Doc. 34) is GRANTED IN PART. Counts V and VI are hereby DISMISSED WITHOUT PREJUDICE. The parties are hereby GRANTED twenty (20) days from the date of this Order to submit memoranda as to the propriety of the court's exercising supplemental jurisdiction over Plaintiffs' state law claims.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 19th day of March, 2012.

Christina Reiss, Chief Judge
United States District Court